**JS-6**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association, | Case No.: 2:24-cv-08621-MCS-BFM |
| Plaintiff, | **CONSENT DECREE (ECF No. 10)** |
| v. | |
| STRATEGIC MATERIALS, INC., a Delaware Corporation, | |
| Defendant. | |

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Strategic Materials, Inc. ("Defendant") owns and facilities at 3211 E. 26th St., Vernon, CA 90058, under Waste Discharger Identification number 4 19I022040 ("Vernon Facility"), and at 7000 Bandini Blvd, City of Commerce, CA 90040, under Waste Discharger Identification number 4 19I012612 ("Commerce Facility") (each of the Vernon Facility and Commerce Facility shall be referred to individually as a "Facility" and collectively as the "Facilities");

**WHEREAS,** the Facilities are each categorized under Standard Industrial Classification ("SIC") Code 5093, covering Scrap and Waste Material Recycling;

**WHEREAS,** storm water discharges associated with industrial activity at the Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facilities ("General Permit" or "Permit")[1], and the Federal

---

[1] Any references to the "General Permit" herein shall be to the then-effective version of the permit, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein.

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facilities result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on April 30, 2024, Plaintiff issued notices of intent to file suit as to each Facility ("60-Day Notice Letters") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on October 7, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-08621 MCS-BFM ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act based on the 60-Day Notice Letters;

**WHEREAS**, Defendant neither admits nor denies the allegations set forth in the 60-Day Notice Letters and the Complaint relating to the Facilities;

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties"), without adjudication of Plaintiff's claims or any admission of liability by Defendant, agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letters and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place are located within this District.

3.    The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.    LA Waterkeeper has standing to bring this action.

5.    The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree.

//

//

//

# I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letters and Complaint.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facilities.

# II.    AGENCY REVIEW AND DEFINITIONS

## A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies ("Agency Review Period"), as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the Agency Review Period.

10.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

## B.    DEFINITIONS

11.    Terms used in this Consent Decree which are defined in the General Permit, CWA, or regulations or rules promulgated under the CWA have the meaning

assigned to them in the General Permit, statutes, regulations or rules. Additionally, whenever the terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

       a.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

       b.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

       c.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the applicable Facility.

       d.    "Effective Date" day this Consent Decree is approved and entered by the Court.

       e.    "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) using the following search terms and/or URLs

            i.    Commerce Facility. "90040, Bell Gardens, CA, USA" available at https://forecast.weather.gov/MapClick.php?lat=33.9772&lon=-118.1519.

            ii.    Vernon Facility. "90058, Vernon, CA, USA" available at https://forecast.weather.gov/MapClick.php?lat=34.0025&lon=-118.2131.

       f.    "Term" means the period between the Effective Date and the "Termination Date."

g.     "Termination Date" as to each Facility means the earliest of the following events:

i.     June 30, 2027;

ii.    June 30, 2026, if there have been no annual or instantaneous maximum NAL or NEL exceedances, as defined by the General Permit, since the Effective Date; or

iii.   Five (5) days after Defendant provides Plaintiff with notice of approval by the Regional Board of a Notice of Termination ("NOT") as that term is defined in the General Permit for the applicable Facility.

iv.    Notwithstanding the foregoing, if any monetary requirements pursuant to Section III.E and F of the Consent Decree are still owing upon the trigger of the applicable event enumerated in Paragraphs 11.g.i-iii above, then the Consent Decree will terminate upon satisfaction of the monetary requirements.

v.     Notwithstanding the foregoing, if any Dispute Resolution proceeding in accordance with Section IV of this Consent Decree is pending upon the trigger of the applicable event enumerated in Paragraphs 11.g.i-iii above, then the Consent Decree will terminate seven (7) days from either notice by the Settling Party that invoked Dispute Resolution that the dispute has been fully resolved or an order of the Court resolving the dispute.

h.     "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

# III.    COMMITMENTS OF THE SETTLING PARTIES

## A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    <u>Current and Additional Best Management Practices.</u> Defendant shall implement BMPs identified in the respective SWPPPs for the Vernon Facility and for the Commerce Facility and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit.

14.    <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain electronic rain gauges or sensors at each Facility within ten (10) days of the Effective Date. The rain gauges/sensors shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauges/sensors for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauges/sensors shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, as applicable, except in the event of equipment malfunctions.

15.    <u>Structural and Non-Structural BMPs for the Facilities</u>.

      a.    <u>Improving and Optimizing Existing Treatment Systems at Each Facility</u>. As soon as possible but no later than fifteen (15) days of the Effective Date, Defendant shall take the following actions to improve and optimize the existing treatment system at each Facility:

            i.    Fully characterize the existing retention volume at each Facility and thoroughly assess the on-site treatment

systems, including all treatment elements and any manual or automated controls used;

ii. Identify and implement opportunities to automate elements of the treatment system (such as float switch(es) in existing holding tanks to initiate treatment process automatically) to ensure untreated storm water does not bypass treatment and discharge off-site;

iii. Automate application of flocculents to ensure consistent and efficient treatment of storm water prior to discharge;

iv. Implement continuous flow monitoring to verify the reliability of the system and to quantify the total contaminant load being processed;

v. Replace treatment media (in order to evaluate treatment media effectiveness);

vi. Apply a black coating to existing white or translucent tanks to mitigate algal growth; and

vii. Develop and implement a protocol for recordkeeping and a schedule for routine removal of storm water that is stored on-site (prior to treatment) that ensures storm water is not stored onsite for more than thirty (30) days prior to treatment and discharge through the existing storm water treatment system.

viii. No later than twenty-two (22) days of the Effective Date, Defendant shall confirm to LA Waterkeeper in writing that items in Paragraph 15.a.i-vii above have been implemented as set forth above.

ix. Defendant shall provide LA Waterkeeper with a copy of the records generated from the recordkeeping protocol

8

described in Paragraph 15.a.vii above within fourteen (14) days of receipt of a written request from LA Waterkeeper.

b.    Structural and Non-Structural BMPs for Each Facility. Defendant shall develop and implement the following BMPs at each Facility:

i.    As soon as possible but no later than thirty (30) days of the Effective Date, evaluate whether installation of berms, curbs, or similarly effective physical barriers are necessary to prevent storm water discharges from any point other than Discharge Points and, if so, install such berms, curbs, or similar physical barriers, as applicable. Within thirty-seven (37) days of the Effective Date, Defendant shall confirm to LA Waterkeeper in writing, with photographs as appropriate, that this BMP was completed;

ii.    Implement a sweeping program using (1) a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on accessible paved areas at least once daily, and (2) employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

iii.    During the Wet Season, as necessary, replace any wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

iv.     Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect any wattles/filters/socks deployed at each Facility;

v.      Within twenty-four (24) hours prior to a Forecasted Rain Event, cover any exposed stockpiles, exposed scrap bins, and trash cans that are not actively in use with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall; and

vi.     Institute an equipment and vehicle maintenance program that ensures:

1.      no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facilities, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

2.      maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

3.      when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

**B.     SAMPLING AT THE FACILITIES**

16.     Defendant shall develop a monitoring program at each Facility consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point at each Facility from Qualifying

Storm Events[2] to the extent required by the General Permit. Defendant shall use best efforts to collect such samples during the first two (2) Qualifying Storm Events during scheduled facility operating hours and when conditions are safe in each half of the Reporting Year (or where the Facility has obtained a sampling frequency reduction certificate, during the first Qualifying Storm Event during scheduled facility operating hours and when conditions are safe in each half of the Reporting Year). If Defendant would have been required to collect samples during a precipitation event during scheduled operating hours but the precipitation event does not produce a discharge, or occurs during unsafe sampling conditions (i.e., dangerous weather conditions such as flooding or electrical storms), Defendant will collect photographic evidence of the lack of discharge or unsafe sampling conditions where feasible. Defendant shall submit such photographs, if any, to LA Waterkeeper by email, along with rain gauge/sensor data for specific precipitation events or time frames, within fourteen (14) days of a written request for such records by LA Waterkeeper.

17. <u>Sampling Parameters</u>. All samples collected in accordance with the General Permit and this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameters shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the

---

[2] For clarity, storm water that is stored and subsequently discharged from either Facility shall be sampled at the time of discharge, whether such discharge occurs during a QSE or not.

1  applicable Table 1 limit for such purposes within fourteen (14) days of such

2  notification.

3    18.  Laboratory and Holding Time. Except for pH samples, Defendant shall

4  deliver all samples to a California-certified environmental laboratory for analysis

5  within allowable hold times, pursuant to 40 C.F.R. Part 136.

6    19.  Methods. All QSE samples collected in accordance with this Consent

7  Decree and the General Permit shall be analyzed using the methods specified in the

8  General Permit. Analysis of pH will be completed onsite using a portable instrument

9  that is calibrated and used according to the manufacturer's instructions.

10    20.  Reporting. Defendant shall provide complete laboratory results of all

11  QSE samples collected at each Facility to SMARTS in accordance with the General

12  Permit, and shall provide copies to LA Waterkeeper within fourteen (14) days of

13  receiving the laboratory report with the results.

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

CONSENT DECREE

C.    **REDUCTION OF POLLUTANTS IN DISCHARGES**

21.    <u>Table 1 Numeric Limits</u>.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L (annual); 400 mg/L (instantaneous) | General Permit NAL |
| pH | < 6 or > 9 s.u. (instantaneous) | General Permit NAL |
| Oil and Grease | 15 mg/L (annual); 25 mg/L (instantaneous) | General Permit NAL |
| Aluminum | 0.75 mg/L (annual) | General Permit NAL |
| Cadmium | 0.0053 mg/L (annual); 0.0031 mg/L (instantaneous) | General Permit NAL; General Permit NEL |
| Copper | 0.0332 mg/L (annual); 0.06749 mg/L (instantaneous) | General Permit NAL; General Permit NEL |
| Iron | 1 mg/L (annual) | General Permit NAL |
| Lead | 0.262 mg/L (annual); 0.094 mg/L (instantaneous) | General Permit NAL; General Permit NEL |
| Zinc | 0.26 mg/L (annual); 0.159 mg/L (instantaneous) | General Permit NAL; General Permit NEL |
| COD | 120 mg/L (annual) | General Permit NAL |

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

1

2       22.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 has the same

3 meaning as an Exceedance under the General Permit.

4                a.    For annual NALs, an Exceedance occurs when the average of all

5                       analytical results from all samples taken at a facility during a

6                       reporting year for a given parameter exceeds an annual NAL value

7                       listed in Table 1 above;

8                b.    For the instantaneous NALs, an Exceedance occurs when two or

9                       more analytical results from samples taken for any parameter

10                       within a reporting year exceed the instantaneous NAL value, or

11                       are outside of the instantaneous NAL range (for pH); and

12                 c.    An instantaneous maximum NEL Exceedance occurs when two

13                       (2) or more analytical results from samples taken for any single

14                       parameter within a reporting year exceeds the instantaneous

15                       maximum NEL value.

16       23.    <u>Action Plan</u>. If storm water samples demonstrate an Exceedance as

17 defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for

18 reducing and/or eliminating the relevant discharge of pollutants for the applicable

19 Facility ("Action Plan").[4] However, an Action Plan shall not be required when the

20 BMPs for the applicable Exceedance for the same pollutant in the same drainage area

21 were addressed in a previous Action Plan in the same Reporting Year and such BMPs

22 were not yet implemented as of the date of the QSE sampling that led to the

23 Exceedance.[5] The complete Action Plan shall be submitted to LA Waterkeeper (1)

24

25

26 [4] The "Action Plan" discussed in this Consent Decree is a separate and distinct requirement from any "Action Plan" or Exceedance Response Actions discussed in the General Permit.

27 [5] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2)

28 when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

1   within thirty (30) days of receipt of the laboratory report demonstrating an

2   instantaneous NAL or NEL Exceedance at the applicable Facility, (2) within thirty

3   (30) days of receipt of the laboratory report demonstrating an annual NAL

4   Exceedance would be inevitable[6] were the applicable Facility to collect four or fewer

5   QSEs in the Reporting Year, or (3) otherwise, by July 31 following the Exceedance at

6   the applicable Facility (or June 30, 2027 if the Exceedance occurs during the 2026-

7   2027 Reporting Year). If an Action Plan is required for both Facilities, Defendant

8   may submit one Action Plan that addresses both Facilities.

9           a.    Action Plan Requirements. Each "complete" Action Plan

10                submitted shall include at a minimum: (1) the identification of the

11                Exceedance(s); (2) an explanation of the possible cause(s) and/or

12                source(s) of each Exceedance; (3) the identification of any

13                modified or additional BMPs that will be implemented to achieve

14                compliance with the numeric limit(s), as well as the design plans

15                and calculations of these additional BMPs; and (4) time schedules

16                for implementation of the proposed BMPs. The time schedule(s)

17                for implementation shall ensure that all BMPs are implemented as

18                soon as possible, but in no event later than ninety (90) days

19                following the submission of the Action Plan, unless a later

20                implementation date is mutually agreed upon by the Settling

21                Parties. Within thirty (30) days of each of the BMPs set forth in

22                the Action Plan being implemented, Defendant shall notify LA

23                Waterkeeper in writing, with representative photographs, that such

24                BMP has been implemented as set forth in the Action Plan.

---

[6] E.g., An Exceedance is "inevitable" at a Facility when the sum of all samples for that pollutant at that point in the Reporting Year is high enough that the Facility will have an annual NAL exceedance even if all remaining samples for the pollutant that Reporting Year are non-detects.

b. <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the applicable Facility's storm water discharges:

   i. <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

   ii. <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

   iii. <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

   iv. <u>Evaluation of Existing BMPs</u>. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

   v. <u>Resurfacing</u>. Patching, paving, or otherwise resurfacing areas of degraded pavement or asphalt throughout the applicable Facility.

   vi. <u>Wattles/Filters/Filtration socks</u>. On an annual basis, employing and securing new wattles/filters/filtration socks (biochar or other equivalent media) at storm drain inlets to remove sediments, metals, and organic materials in storm

water from the Facility, and configuring such wattles/filters/socks to achieve maximum contact time with storm water, *i.e.,* in multiple layers and/or overlapping formations.

vii.    Improving Overhead Structures. Improving existing overhead structures, consistent with the definition of "Storm-Resistant Shelters" from the Industrial General Permit, to minimize the potential for storm water to encounter the material below the structures or for contents to become windborne.

viii.    Inspection of Hazardous Material and Waste Storage Areas. Increasing the frequency of inspection of hazardous material and waste storage areas for proper implementation and maintenance of control measures and containment integrity.

c.    Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for

implementing any other unrelated BMP set forth in the Action Plan.

    d.    <u>Action Plan Payments</u>. Action Plan Payments are included in the Compliance Monitoring Payment set forth below.

**D.    VISUAL OBSERVATIONS**

24.    <u>Storm Water Discharge Observations</u>. Defendant shall comply with the sampling event visual observation requirements set forth in Section XI.A.2 of the General Permit.

25.    <u>Monthly Visual Observations</u>.  Defendant shall comply with the monthly visual observation requirements set forth in Section XI.A.1 of the General Permit.

26.    <u>Visual Observations Records</u>. Defendant shall maintain observation records, including representative photographs (as applicable), to document compliance with Paragraphs 24 and 25. Such records shall include the date, approximate time, locations observed, presence and probable source of any observed pollutants, name of person(s) that conducted the observations, and any response actions and/or additional SWPPP revisions necessary in response to the visual observations. Defendant shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

27.    <u>Employee Training Program</u>. During the term of this Consent Decree, Defendant shall comply with all employee training requirements in the Facilities' SWPPPs and General Permit.  Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

28.    <u>SWPPP Revisions</u>.

    a.    <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facilities' SWPPPs to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete,

updated SWPPPs to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.

    b.    <u>Additional SWPPP Revisions</u>.

        i.    Within thirty (30) days after completion of the Action Plan review process set forth in Paragraph 23 above (or resolution of any Action Plan dispute pursuant to Section IV below), Defendant shall revise the then-current SWPPP for the relevant Facility to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

        ii.    Within thirty (30) days after any material changes in sources of industrial pollutants that may affect the quality of industrial storm water discharges, changes to Discharge Points, changes in the relevant Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge, Defendant shall revise the then-current SWPPP for the relevant Facility to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    c.    <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to Paragraphs 28.a and 28.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP for the applicable Facility to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to a given SWPPP, Defendant shall consider each of the comments and proposed changes and either accept

them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to a given SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

## E. COMPLIANCE MONITORING AND REPORTING

29. <u>Site Inspections.</u> LA Waterkeeper may conduct one annual site inspection ("Site Inspection") at the Vernon Facility and one annual Site Inspection at the Commerce Facility during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event a site inspection would be relevant to resolving a Dispute Resolution proceeding invoked in accordance with Section IV of this Consent Decree, the Parties shall utilize the annual Site Inspection for resolving the dispute where feasible, provided that the inspection shall not necessarily be limited to the area of the Facility relevant to the Dispute Resolution proceeding.  Where utilization of the Site Inspection is not possible (e.g., because the annual site inspection already occurred or the dispute-related site inspection must occur in specific weather), the Parties agree to meet and confer regarding a potential additional site inspection at the applicable Facility for purposes of resolving the dispute. Any Site Inspection shall occur during scheduled facility operating hours, and LA Waterkeeper will provide Defendant with as much notice as possible but at least forty-eight (48) hours' notice prior to a Site Inspection in anticipation of wet weather and at least seventy-two (72) hours' notice prior to a Site Inspection in anticipation of dry weather. For any Site Inspection requested to occur in wet weather, in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facilities in wet weather, the Parties shall meet and confer regarding adjusting timing or rescheduling

during normal business hours without requiring an additional forty-eight (48) hours' notice. Notice will be provided by telephone and electronic mail to the individual(s) designated below at Paragraph 57.  During a Site Inspection during wet weather, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the inspected Facility's Discharge Point, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative.

      30.   <u>Document Provision.</u> During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

      a.   Defendant shall provide LA Waterkeeper with a copy of all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at either of the Facilities that are submitted to the Regional Board or the State Board within seven (7) days of submission.  Alternatively, if the submission to the Regional Board or State Board is made via the State Board's Stormwater Multiple Application and Reporting Tracking System ("SMARTS"), Defendant may satisfy this requirement by providing notice to LA Waterkeeper via electronic mail that said results have been uploaded to SMARTS within seven (7) days of uploading said documents.

      b.   Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at either of the Facilities received by Defendant from the Regional Board or the State Board shall be sent to LA Waterkeeper within seven (7) days of receipt by Defendant.

31.    <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Plaintiff Twenty Five Thousand Dollars ($25,000.00). Payment shall be made within forty-five (45) days of the Effective Date. The payment shall be made via check, made payable to: "Los Angeles Waterkeeper" and delivered via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

32.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial projects that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waters tributary to the San Pedro Bay, and in recognition of the good faith efforts of Defendant to comply with all aspects of the General Permit and CWA, and in lieu of payments of any penalties, which have been disputed by Defendant but may have been assessed had this action been adjudicated in a manner adverse to Defendant, Defendant agrees to make a payment totaling Seventy-Seven Thousand Dollars ($77,000.00) to the Rose Foundation made within forty-five (45) days of the Effective Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>LA Waterkeeper's Fees and Costs.</u> Defendant shall pay a total of Seventy Thousand Five Hundred Dollars ($70,500.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment shall

be made within forty-five (45) days of the Effective Date and made payable to: California Coastkeeper Alliance and delivered by overnight carrier to California Coastkeeper Alliance, 1100 11th Street, 3rd Floor, Sacramento, California 95814. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.     Interest on Late Payments. Defendant shall pay interest on any payments, fees, or costs owed to LA Waterkeeper under this Consent Decree that LA Waterkeeper has not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of the lower of 4% per year or the maximum rate permitted by applicable law. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

35.     This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

36.     Informal Dispute Resolution. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

37.     Formal Dispute Resolution. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 36, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

38.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

39.     Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letters and/or the Complaint up to and including the Termination Date of this Consent Decree.

40.     Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letters and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.     Enforcement of this Consent Decree is LA Waterkeeper's exclusive remedy for any violation of its terms, including any subsequent violation of the General Permit, or any successor, modified, or replacement permits, occurring prior to termination of the Consent Decree.

42.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facilities with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

43.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signatures shall be deemed to be originally executed counterparts of this Consent Decree.

45.     <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that they are fully authorized by the Party whom they represent to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.     <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

48.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

51.    <u>Diligence</u>. To the extent applicable, Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any

deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper | Sherry Williams |
| Barak Kamelgard | Eric Tapper |
| Benjamin Harris | Lydia Gibson |
| Erina Kwon | Zachary Aucker |
| Madeleine Siegel | Strategic Materials, Inc. |
| 360 E 2nd St., Suite 250 | 17220 Katy Freeway, Suite 150 |
| Los Angeles, CA 90012 | Houston, TX 77094 |
| Email: barak@lawaterkeeper.org | swilliams@smi.com |
| Email: ben@lawaterkeeper.org | etapper@smi.com |
| Email: erina@lawaterkeeper.org | lgibson@smi.com |
| Email: madeleine@lawaterkeeper.org | zaucker@smi.com |
| Phone: (310) 394-6162 | (281) 647-2730 |
| | |
| With copies to: | With copies to: |
| California Coastkeeper Alliance | Erika Spanton |
| Drevet Hunt | Beveridge & Diamond |
| 1100 11th Street, 3rd Floor | 600 University Street, Suite 1601 |
| Sacramento, California 95814 | Seattle, WA 98101 |
| Email: dhunt@cacoastkeeper.org | espanton@bdlaw.com |
| Phone: (415) 606-0864 | (206) 315-4815 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

1    Upon approval and entry of this Consent Decree by the Court, this Consent

2    Decree shall constitute a final judgment between the Plaintiff and Defendant.

3

4    **IT IS SO ORDERED.**

5

6    Dated: December 2, 2024

7

8

9    _____

10   MARK C. SCARSI
     UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28